· JOSHUA LEVERING, ET AL., CONSTITUTING A COM-
MITTEE OF THE LORD'S DAY ALLIANCE,
A BODY CORPORATE, ET AL.,

*vs.*

THE BOARD OF SUPERVISORS OF ELECTIONS
OF BALTIMORE CITY.

*General elections: names and questions to be submitted; subject
for the Legislature.   Municipal authorities:
no inherent jurisdiction.*

It is the exclusive function of the Legislature to prescribe
the objects for which a general State election shall be held.

p. 337

The only offices to be filled and the only questions to be sub-
mitted at such election are those specified or approved for that
purpose by the General Assembly.                        p. 337

There is no authority in the Mayor and City Council of
Baltimore to submit a question to the voters at a general State
election, without legislative authority.               p. 337

Sections 54, 55 and 57 of Article 33 of the Code, do not admit
indiscriminately, to a place on the official ballot, every issue that
a county or municipality of the State may wish to submit to a
vote of the people.                                    p. 338

*Decided November 15th, 1916.*

The facts are stated in the opinion of the Court.

Appeal from the Superior Court of Baltimore City.
(AMBLER, J.)

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*Isaac Lobe Straus,* for the appellants.

*Albert C. Ritchie, the Attorney General,* and *Wm. J. Ogden,* for the appellee.

Urner, J., delivered the opinion of the Court.

The only question requiring decision on this appeal is whether, under existing legislation, provision can be made for submitting to the voters of Baltimore City, at a general election, an ordinance of that municipality, relating to an exercise of its police power. On June 24, 1916, the Mayor and City Council of Baltimore passed an ordinance repealing section 3 of Article 31 of the City Code, which prohibited the playing of ball or any other game on the Sabbath Day within the limits of the city, and re-enacting the section with amendments so as to except from such prohibition the playing of amateur baseball, golf, lawn tennis, croquet, basketball, football, lacrosse, quoits, soccer and field and track exercises, on Sunday afternoons, in the parks of the city, and on open lots under permits from the Mayor and the owner, provided that no compensation was received by the players and no admission fees were paid by the spectators. This ordinance, by its terms, was not to become effective until it should be submitted to and approved by the voters of Baltimore at the general election in November, 1916. The Supervisors of Election of Baltimore City, upon the certification of the ordinance to them by the City Register, were preparing to submit to the voters the question of its approval, by an appropriate form of referendum to be printed on the official ballots for use at the general election on November 7th, 1916, but their action to that end was prevented by this proceeding. In a *per curiam order,* filed soon after the hearing of the case on appeal, it was ruled by this Court

that no authority existed, on the part of the Mayor and City Council, or of the Supervisors of Election, to provide for the submission of the question as to the approval of the ordinance at the general election of this year, and that it should consequently be omitted from the official ballots. The reasons for this conclusion are now to be stated.

It is the exclusive right and function of the Legislature to prescribe the objects for which the general State elections shall be held. The only offices to be filled, and the only questions to be submitted, at such elections, are those specified or approved for that purpose by the General Assembly. The inquiry before us, therefore, was whether any legislative sanction could be found for the proposed referendum. No specific grant of power to the Mayor and City Council of Baltimore to refer questions of that nature to the popular vote at a general election has been discovered in the Baltimore City Charter, or in any other statutory enactment, but it was argued that authority for such a submission was afforded by certain provisions of the general election laws. By section 52 of Article 33 of the Code it is provided: "If questions of local concern are to be submitted for approval to the vote of the people of a county or a municipality, the same shall be certified to said Supervisors of Elections within said period" (thirty days before the election) "by the County Commissioners or the Register of the City of Baltimore, as the case may be, and shall be advertised as herein provided in the case of nominees for county or city offices." There are provisions also that "the official ballots shall contain a statement of every constitutional amendment or other question to be submitted to the vote of the people at any election," that "a constitutional amendment, or any question to be submitted to the popular vote, shall be printed in a separate column to follow immediately after the names of the candidates," and that "if at any election there be a constitutional question, or any other question, to be submitted to the popular vote, the said question shall be placed upon

said ballot in the form following: 'For Constitutional Amendment,' 'Against Constitutional Amendment,' 'For Proposition,' 'Against Proposition.' * * *" Code, Article 33, sections 54, 55, 57.

It was not the purpose of these provisions to admit indiscriminately to a place on the official ballots, every issue which any county or municipality of the State might propose to have submitted to a vote of the people. The questions of local concern, to which the election law refers, are those which the Legislature has authorized or required to be subjected to the test of popular approval or rejection. Familiar instances of such provisions are the "local option" laws for various sections of the State, and acts permitting the issuance of county or municipal bonds, in certain cases, when sanctioned by the voters of the locality affected. If it could be held that, without antecedent authority from the General Assembly, all questions of local interest to a county or municipality must be printed and submitted on the official ballots, when certified by a Board of County Commissioners or by the City Register of Baltimore, it is possible that the processes of a general election might at times be unduly encumbered with such proposals. But apart from this consideration, we are clearly of the opinion that the general election laws contemplate the submission of only such questions as may be formulated in pursuance of legislative permission or direction.

The cases of *Baltimore* v. *Clunet,* 23 Md. 449, and *State, ex rel. Baltimore City* v. *Kirkley,* 29 Md. 85, have been cited to the proposition that municipal ordinances may be validly passed to take effect upon a contingency. In the first of these cases an ordinance for the opening of a street provided that it should not become operative until certain pending cases were dismissed and until certain property owners assented to some of its provisions, and in the other case an ordinance for the building of a new City Hall provided that it should not take effect until the Legislature had approved a section authorizing an issue of bonds. In this case no ques-

tion is raised as to the theoretical right of the city to pass ordinances to become effective only upon the occurrence of some stated and appropriate event, but the difficulty is that the special contingency, upon which the present ordinance by its terms is made to depend, would involve the exercise of an authority, affecting the administration of the election system of the State, which the Legislature alone can confer, and which the municipality has not acquired.

There is a provision of the State Constitution to the effect that no debt shall be created by the Mayor and City Council of Baltimore, except temporary loans to provide for deficiencies and certain classes of emergencies, nor shall the credit of the City be extended in aid of any individual, association or corporation, nor shall the City be involved in the construction of works of internal improvement, nor make any appropriation therefor, "unless such debt or credit be authorized by an Act of the General Assembly of Maryland, and by an ordinance of the Mayor and City Council of Baltimore, submitted to the legal voters of the City of Baltimore, at such time and place as may be fixed by said ordinance, and approved by a majority of the votes cast at such time and place." In thus limiting the power of the municipality to pledge its credit and appropriate its funds, the Constitution has conferred unlimited discretion upon the Mayor and City Council as to the selection of the time and place for securing an expression from the voters upon questions of the character just indicated. By virtue of this ample authorization, and in accordance with the terms of particular statutes referring to the constitutional provision we have cited, numerous questions relating to loans and appropriations for municipal improvements have been submitted at general elections to the voters of Baltimore City. The ordinances which have appointed a general election as the occasion for taking the vote required by the Constitution, in the instances specified, have been passed in the exercise of an unqualified power expressly conferred. No similar grant of authority has been made, either in the organic law

or by statute, for the employment of the means and agencies of the State election system for the purposes of a municipal referendum like the one proposed in the ordinance now under consideration.

The right of the Mayor and City Council to submit the ordinance to the voters of. the City was further disputed upon the theory that its provisions were in conflict with the laws of the State prohibiting "unlawful pastimes or recreations" on Sunday. This question plainly lies beyond the necessary scope of our present decision. If the ordinance we are considering had been enacted for certain, and not for contingent, operation, the question whether it was opposed to the terms and policy of the State legislation on the subject would be one of vital importance. But such a situation is not now presented. The regulations of the ordinance were not designed to become effective simply by force of their enactment by the Mayor and City Council, but were expressly made to depend upon a contingency which, as prescribed, we have found to be legally impracticable. To decide the case on the theory that we are dealing with the ordinance as a completely enacted or finally ratified measure, would be to assume or anticipate an event which may never occur. It has seemed proper to us, therefore, to confine our decision to the essential question presented by the appeal.

In accordance with the views we have expressed the *per curiam* order, heretofore filed, reversed the order of the Court below dismissing the petition for the writ of mandamus, and remanded the case to the end that the writ be issued as prayed, no issue of fact being involved; the costs to be paid by the appellees.