LUCY J. WILLIAMS ET AL.

*vs.*

WILLIAM F. BROENING, MAYOR, ET AL.

*Article XI-A of Constitution—Baltimore City Charter—Adoption by Popular Vote—Notice of Election—Newspapers of General Circulation—Newly Annexed Wards— Taxation—Property in Annex.*

Every intendment should be made in favor of the validity of the Baltimore City, Charter, supposed to be adopted under Article XI-A of the State Constitution, known as the Home Rule Amendment (Acts 1914, Ch. 416), after the lapse of a considerable time since it went into operation and the election of a Mayor and City Council thereunder.                                    p. 229

The provision in the Constitution that the Charter should, before submission to the people be published in two newspapers of general circulation, is not so far mandatory as to the character of the newspapers as to render the Charter, after its adoption, subject to attack by reason of a question as to the extent of the circulation of the papers selected as mediums of publication, unless it be shown that the failure to comply strictly with the constitutional provision affected the result of the vote.

pp. 230-232

The Charter having been published in the *Daily Record*, which has been by this Court stated to be a daily newspaper, and in the *Municipal Journal*, in which the Legislature has authorized the publication of legal and municipal advertisements and notices, and it being fair to assume that a matter of such public importance was so exhaustively discussed in the newspapers as to bring its provisions to the attention of the voters, it cannot be said that the substantial purposes of the constitutional requirement as to publication were not accomplished.

p. 232

The Charter is not open to attack because not submitted to the voters of four newly annexed wards, it appearing that the Act, by which these wards had been annexed to the City, did not require the registration of the residents therein as voters of the City prior to the election at which the Charter was submitted,

and that as a matter of fact there was no registration of voters in such wards until after the submission.                    p. 233

Since Section 2 of Article XI-A of the Constitution provides that the powers heretofore granted to the City, as set forth in Public Local Laws, Article 4, Sec. 6, shall not be enlarged or extended by any Charter formed under the provisions of said Article, and Section 6 of said Article of the Constitution provides that this Article shall not be construed to authorize the exercise of any powers in excess of those conferred by the Legislature upon the City, it follows that, since the old Charter prohibited the City from taxing property in the Old Annex—that is, the property annexed under the Act of 1888—at the same rate at which the property which was within the City limits prior to that time is taxed, the City authorities are, by said Article of the Constitution, not authorized to submit to the voters an amendment to the present Charter providing for the taxation of property in the Annex at the full City rate.

pp. 234, 235

In the provision of Section 6 of Article 4 of the old Charter of Baltimore City, authorizing the levy of such taxes as may be necessary, subject to the provisions and limitations "herein contained," the words in quotations are to be construed as meaning "contained in any part of this Article," and not as referring only to provisions and limitations contained in that section, and consequently the City could not tax property in the Old Annex at the full City rate.                    p. 235

In view of the fact that the good faith of the State was pledged not to repeal the qualified exemption conferred upon property in the Old Annex by the Annexation Act of 1888, nothing short of the clearest expression of such intention should be taken as meaning that the Legislature intended to surrender the good faith of the State to the keeping of a subordinate governmental agency, the City of Baltimore, whose interest it might be to forget the obligation.                    p. 236

*Decided November 21st, 1919.*

Appeal from the Circuit Court of Baltimore City (GOR-TER, J.).

The cause was argued, together with that next following, before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Arthur W. Machen, Jr., Julian S. Jones* and *Joseph C. France,* for the appellants.

*Roland R. Marchant, William H. Maltbie* and *Alfred S. Niles,* for the appellees.

*Wm. Edgar Byrd,* attorney for the Real Estate Board of Baltimore City, filed a brief as *amicus curiae,* as did *Osborne I. Yellott,* attorney for the Home Builders' Association.

ADKINS, J., delivered the opinion of the Court.

This is an appeal from the refusal of the Circuit Court of Baltimore City to enjoin the Mayor and City Council of Baltimore from continuing the publication of an advertisement of a proposed amendment to the Charter of said city relating to the taxation of real and personal property in the territory annexed to Baltimore City by Chapter 98 of the Acts of 1888, and the Supervisors of Election of said city from placing upon the official ballot to be used at the General Election to be held in said city on November 4th, 1919, and from using any public money or funds for defraying the costs of such advertisement or of printing said proposition on the official ballots.

The proposed amendment provides that:

"The Charter of Baltimore City shall be amended by repealing all of Section 4 of Article 1 of said Charter and substituting in lieu thereof the following:

"4. All property, real and personal, situated or held in the territory annexed to Baltimore City by the Act of 1888, Chapter 98, shall be subject to levy, taxation and assessment in the same manner and form and at the same rate of taxation as property of similar character or description within the limits of said City as

they existed prior to the passage of said Act may be subject."

The right to submit the proposed amendment is contested by the appellants on the following grounds, as alleged by them:

1.  The Charter of Baltimore City supposed to have been adopted under Article XI-A of the Constitution, known as the Home Rule Amendment, was never validly adopted because:

(a)  It was not published by the Mayor as required by Article XI-A in two newspapers of general circulation published in the City of Baltimore within thirty days after it was reported to him by the Charter Commission. It was published in the "Daily Record" and in the "Municipal Journal," and the contention of appellants is that neither of these papers was a newspaper of general circulation.

(b)  It was not submitted to the voters of said city at the next general or congressional election after the report of said Charter to the Mayor of Baltimore as required by said Article XI-A, in that the four new wards added by the Act of 1918 were not included with the rest of the city in voting on the proposition.

2.  The proposed measure is in excess of the power to amend the Charter conferred by Article XI-A, Section 5, even if the new Charter was validly adopted.

It is manifest if either of these objections was well taken, the injunction should have been granted.

We shall first dispose of the first objection.

Every intendment should be made in favor of the validity of the Charter after the lapse of so long a time since it went into operation.

Until October of the present year no question seems ever to have been raised as to the sufficiency of the publication of the Charter. In the meantime a Mayor and City Council have been elected and we cannot say what complications might arise if the Charter should be stricken down.

We do not regard the provision in the Constitution as to the character of newpapers in which the charter was to be published before submission as so far mandatory in its nature as to render the charter after its adoption subject to attack by reason of a question as to the extent of the circulation of the papers selected by the Mayor as mediums of publication unless it be shown that the failure to comply strictly with the constitutional provision affected the result of the vote on the proposition.

In *Carr* v. *Hyattsville,* 115 Md. 545, the statute under consideration was one submitting to the voters of Hyattsville the question whether certain streets should be improved. The statute provided that for the special election to determine said question ballots should be prepared having printed on them "For the Act to Improve the Streets" and "Against the Act to Improve the Streets." But the ballots voted at the election had printed on them the words: "For the Road Bill" and "Against the Road Bill." The majority of the ballots cast at the election were marked "For the Road Bill," and after canvassing the vote, the Mayor and Common Council declared the Act to be in full force and effect.

Acting under the power conferred by the Act, the Mayor and Common Council passed an ordinance for the improvement of the road bed of Spencer street, one of the streets of said Municipal Corporation, and also providing for notice to the owners of abutting property, and for the assessment for the cost of improvements against such property. A tax payer filed a bill to enjoin the Mayor and Common Council from making any assessment against his property for the improvement of said roadbed, and from enforcing any assessment against his property for that improvement, on the ground that the Act had never become effective and operative, because the ballots cast at the election were not prepared in strict conformity to the requirements of its provisions. The defendant demurred to the bill, and the lower Court sus-

tained the demurrer. This Court approved the ruling of the lower Court and in passing on the question at issue said:

"The simple and sole question in the case is this: Did the preparation and voting of the ballots in the manner in which they were prepared and voted prevent the Act from becoming a valid and effective law? If so, it can only be because the provisions of the Act relating to the form of the ballot are mandatory and to be strictly observed. We do not think that the form of the ballot as prepared was an essential departure from the requirements of the Act, and it would seem to be reasonably certain that the voters understood that they were voting for or against the approval of this particular Act, and did approve it by a majority vote.

"The Court ought not to set aside their clearly expressed will, unless required to do so by some imperative rule of law. Mr. McCrary in his work on elections, section 190, says: 'If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits, or affects the result of the election or not. Such a statute is imperative, and all consideration touching its policy or impolicy must be addressed to the Legislature. But if, as in most cases, that statute simply provides that certain acts or things shall be done within a particular time, or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election.' The rule is thus stated in *Pain on Elections,* Sec. 498: 'In general, those statutory provisions which fix the day and the place of the election and the qualification of the voters are substantial and mandatory, while those which relate to the mode of procedure in the election, and to the record and return of the results are formal and directory. * * * The rules prescribed by the law for conducting an

election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain with certainty the result. Generally such rules are directory, and not mandatory, and a departure from the mode prescribed will not vitiate an election, if the irregularities do not deprive any legal voter of his vote, or admit an illegal vote, or cast an uncertainty on the result, and have not been occasioned by the agency of a party seeking to derive a benefit from them.'

"The rule stated by these authors appears to be adopted by the great majority of the courts in this country. * * *

"The plain purpose of the Legislature was that this act should become effective if approved by a majority of the voters at the special election, and the object of providing the form of ballot was to ascertain the will of the majority of the voters on the question of its approval, and since that majority did approve the act under the form of ballot used, which was substantially, but not strictly, in the words provided in the act, the will of the majority should not be set aside for any of the reasons stated in the bill."

See also the case of *Prince George's County* v. *B. & O. R. R. Co.,* 113 Md. 179, where this Court decided that the provision in Article 3, Section 29 of the Constitution that "the style of all laws of this State shall be, 'Be it enacted by the General Assembly of Maryland,'" is directory and not mandatory. In the case at bar the Charter was published in the *Daily Record,* which this Court said in *Knapp* v. *Anderson,* 89 Md. 189, was a daily newspaper; and in the *Municipal Journal,* in which the Legislature provided by Chapter 477 of the Acts of 1914, municipal advertisements and notices and other legal advertisements and notices might be published in lieu of publication in a daily newspaper, when any law or ordinance required publication in a daily newspaper. Without deciding whether both the *Daily Record* and the *Municipal Journal* are newspapers of general circulation within the meaning of the constitutional provision, we think

the recognition above referred to is important as showing the good faith of the Mayor in selecting said papers as mediums of publication of the Charter.   In addition to the notices given by publication in said papers it can fairly be assumed that in a matter of such importance the daily newspapers of Baltimore City editorially and otherwise commented frequently and exhaustively on the provisions of the proposed Charter, and it is fair to assume that the provisions of the Charter were brought to the attention of the voters of said city generally.   It was stated in argument and not disputed that the Charter was adopted by a majority of more than twenty-four thousand.   In view of the authorities above cited, and taking all the facts of this case into consideration, we are unable to say that the substantial purposes of the constitutional requirement as to publication were not accomplished.

It is significant that while the constitution amendment provides for the publication of the Charter only once in each of two papers, that publication must be far in advance of the submission of the Charter, and a further period of thirty days after the submission is allowed before the Charter becomes operative.   From this it is reasonable to infer that the Legislature in submitting the amendment and the people in adopting it intended, that before any Charter should go into effect every one interested should have abundance of time to object to failure to comply with any modal regulation as to the submission of the Charter, and that it was not contemplated that failure to comply strictly with modal regulations should be made the ground of attack, after the Charter had become operative.

As to the contention that the Charter was not submitted to the voters of the city as required by the Constitution in that the four newly annexed wards were omitted, it is sufficient to say that in our opinion it was submitted to the *qualified* voters of the city.   It is manifest from an examination of the Annexation Act of 1918 that the division of the new wards into election precincts, and provision for registering the residents of said wards who were entitled to registra-

tion, were not mandatory until after the Fall election of
1918. As a matter of fact there was no registration of voters
in said wards until after the submission, consequently at that
time the residents of those wards were not voters of Balti-
more City. We therefore hold that the Charter is not open
to attack on this ground.

This brings us to a consideration of the second objection,
viz: That the proposed amendment is in excess of the power
to amend the Charter conferred by Article XI-A of the Con-
stitution.

Section 2 of that Article provides that the powers hereto-
fore granted to the City of Baltimore, as set forth in Article
4, Sec. 6, Public Local Laws of Maryland, shall not be en-
larged or extended by any Charter formed under the pro-
visions of said Article; and section 6 of said Article pro-
vides that this Article shall not be construed to authorize the
exercise of any powers in excess of those conferred by the
Legislature upon said city.

Now what are the powers conferred upon the city by Sec-
tion 6 of Article 4 (the old Charter) in regard to taxes?

The only parts of said section which have any bearing
upon this controversy are those codified in the Charter of
Baltimore City, 1898, as Section 6, sub-sections 28-A and
28-B, which confer upon the city powers:

> "To levy annually upon the assessable property of
> the City by direct tax, with full power to provide by
> ordinance for collection of the same, such sum of money
> as may be necessary, in its judgment, for the purpose of
> defraying the expenses, charges and sums of money
> which it is, or shall be, required by law to collect for
> other purposes subject to the provisions and limita-
> tions herein contained," and
>
> "To levy and collect taxes upon every description of
> property found within the corporate limits of said City,
> which it is now authorized by law to levy taxes upon,
> for the purpose of defraying the expenses of the Mu-
> nicipal Government * * * provided further that no

> authority is given by this section to impose taxes on
> any property which is now or may hereafter be exempt-
> ed from taxation by any general or special Act of the
> General Assembly of Maryland."

Now if the words "herein contained" are to be construed
as meaning "contained in any part of this Article," that set-
tles the controversy, for section 4 of the Article contains an
express inhibition against doing the very thing which the
proposed amendment seeks to do, viz: to tax property in the
Old Annex, that is the property annexed under the Act of
1888, at the same rate as that at which the property which
was within the city limits prior to that date is taxed.   This
is practically conceded by the appellees.   But they contend
that the words "herein contained" should have a narrower
interpretation and should be construed as referring only to
the provisions and limitations contained in Section 6.   This
would indeed be a narrow construction in view of the fact
that these words occur in a section which is a part of an
entire Act passed at one and the same time (Chapter 123 of
the Acts of 1898), and not in a section passed as an addi-
tion to a pre-existing act, in which case it might be plausibly
argued that the narrow construction was the proper and
natural one.

All doubt, however, as to the meaning of these words, ac-
cording to the legislative intent, is removed, when exactly the
same words are found in another part of the same section in
reference to sewers, where they must include provisions in
other sections of the Act because the subject matter to which
they expressly refer is contained only in other sections.

A further discussion of the matter is therefore unnecessary.

But before concluding this opinion it may not be amiss
to refer to the proviso in Section 1 of Article XI-A of the
Constitution that any charter adopted by this city shall be
subject to the Constitution and Public General Laws of the
State.

And to the proviso in sub-section 28-B of Section 6 of Arti-
cle 4 of the Code of Public Local Laws that no authority is

given by this section to impose taxes on any property which is now or may hereafter be exempted from taxation by any general or special act of the General Assembly of Maryland.

And in connection with those provisos to refer to the Annexation Act of 1888, as amended by Act of 1908, Chapter 286, now codified as Section 4 of Article IV of Public Local Laws, which establishes three classes of property in the old annex, rural, suburban and urban and provides for a different rate of tax as to each.

And to the Annexation Act of 1918, Chapter 82, Section 10, which after providing for taxing property in the New Annex, goes on to say: "Provided that nothing in this Act shall be intended to repeal or affect any law or ordinances now existing or which may hereafter be passed fixing different rates of taxation upon different classes of property, the intent of this provision being that, beginning with the year 1939 and thereafter, there shall be the same rate of taxation throughout the entire limits of Baltimore City upon the same classes of property. It may also be well to refer to the language of JUDGE ROBINSON, speaking for this Court in the case of *Daly* v. *Morgan,* 69 Md. 460, in regard to the good faith of this State being pledged to uphold the arrangement made with the residents of that part of Baltimore County brought into the city under the Old Annex Act of 1888, and to suggest that nothing short of the clearest expression of such intent by the Legislature should be taken as meaning that the Legislature intended to surrender the good faith of the State to the keeping of a subordinate governmental agency whose interest it might be to forget the obligation. For the reasons above expressed a *per curiam* order was passed on the 23rd day of October, 1919, reversing the decree of the lower Court and remanding the case in order that a decree might be passed directing the writ of injunction to issue as prayed by the bill filed in this case.

*Order reversed and case remanded, with costs*
*to appellants.*