## MARY H. SMITH v. STANDARD OIL COMPANY

*City Ordinance—Sufficiency of Title—Nuisance—Automobile Filling Station—Injunction.*

An ordinance of Baltimore City which not only increased the size of gasoline tanks allowable at automobile filling stations, but also increased the number of tanks which might be permitted at a single station, and transferred from the mayor to the board of estimates the discretion as to the issue of permits for such tanks, *held* invalid by reason of insufficiency of the title, which merely stated that it authorized an increase in the size of such tanks.                                        pp. 69, 70

While it would be sufficient if the title referred by number to the ordinance proposed to be repealed, and stated that the purpose of the new ordinance was to repeal the old one and to re-enact it with amendments, if the title goes beyond this and suggests in what respect it is proposed to amend, the suggestion must be accurate and not deceptive.                           p. 69

An injunction will issue to prevent the installation of tanks in a gasoline filling station under a permit granted under an invalid ordinance.                                             p. 70

A gasoline filling station is not a nuisance *per se,* and its erection will not be restrained because, under certain conditions, and with certain accessories, it might become a nuisance.
                                                                    p. 70

*Decided August 6th, 1925.*

Appeal from the Circuit Court of Baltimore City (SOL-
TER, J.).

Bill by Mary H. Smith and others against the Standard
Oil Company of New Jersey, the Mayor, the Board of Esti-
mates, and the Inspector of Buildings, of Baltimore City.
From a decree dismissing the bill, the plaintiffs appeal.
Reversed in part.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*William L. Marbury,* with whom were *Fendall Marbury*
and *Marbury, Gosnell & Williams* on the brief, for the ap-
pellants.

*Wirt A. Duvall, Deputy City Solicitor,* and *Edward F.
Johnson,* with whom were *Philip B. Perlman, City Solicitor,*
and *Johnson & Adams* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

The appellants were plaintiffs in a bill for injunction to
restrain the Standard Oil Company of New Jersey from
building or using an automobile storage station and tanks
for the storage of oil or gasoline or sale thereof on the
premises on the southeast corner of Cathedral and Eager
Streets in the city of Baltimore, and to have the permits
therefor declared null and void; to have Ordinance No.
611½ of Baltimore City, approved June 22, 1921, declared
null and void; to restrain the Inspector of Buildings and the
Mayor of Baltimore City from approving any permit to be
issued to erect, maintain or use such stations. The appel-
lees, who were defendants below, are the Standard Oil
Company of New Jersey, the Mayor of Baltimore, the mem-
bers of the Board of Estimates of Baltimore City and the
Inspector of Buildings of said city. It is alleged in the bill
of complaint, among other things, that:

"3.    The Mayor and City Council of Baltimore,
acting in pursuance of the police power conferred upon
them by the Legislature of Maryland, enacted an Ordi-
nance No. 858, approved April 15, 1923, amendatory of
paragraph 12 of section 47, Ordinance No. 155, ap-
proved June 19, 1908, dealing with the same sub-
ject, wherein it was and is provided that certain classes
of buildings, buildings to be used for certain purposes
such as livery stables, junk shops, paint factories,
breweries, distilleries and various other classes of
buildings, to be used for the carrying on of a busi-
ness, injurious to the residents of any neighborhood in
the city and including garages and automobile stations
in which gasoline is supplied to the users of automobiles
and to their automobiles, should be 'limited as to loca-
tion,' and it was and is provided in paragraph 13 of
said section, as amended by Ordinance No. 648, ap-
proved December 7, 1921, that 'no permit shall be
given by the inspector of buildings for the erection of
any such buildings; nor shall any building not already
used for any of the purposes specified in the preceding
paragraph be converted or used for any of the said
purposes without the approval of the mayor, and, if
such erection, conversion or use be approved by him,
there shall be incorporated in the permit therefor such
regulations regarding the location of said building as
may be necessary, in the judgment of the mayor, to
properly safeguard the interests of the public.    No
permit for such buildings or the conversion or use of
same, shall be issued unless at least ten days' notice of
the application therefor shall be published not less
than four times in at least two daily newspapers in
Baltimore City, and every such application shall be
conspicuously posted upon the property and the ap-
plication, accompanied by a sum sufficient to pay the
cost of such notice and posting."

That:
"4.    It was, and is, the duty of the Mayor of Bal-
timore City, to exercise the powers conferred upon
him by the ordinance above set forth, as amended, on

behalf and solely on behalf of the health, safety, morals and welfare of the public and not to exercise such powers in such a manner as to conflict or interfere with the powers of the police commissioner of the City of Baltimore or in any manner to impede, obstruct, hinder or interfere with said police commissioner or any of his agents."

That:

"5. The Mayor and City Council of Baltimore further acting in pursuance of the police power conferred upon them on June 22, 1921, enacted an ordinance, No. 611½, a duly certified copy of which ordinance is herewith filed as 'Plaintiffs' Exhibit No. 3,' said ordinance being entitled: 'An ordinance to repeal and reordain with amendments, section 75 of Art. 11 of the Baltimore City Code of 1906, title 'Police Regulations and Prevention of Fires,' sub-title 'Inflammable and Explosive Materials,' by authorizing an increase in the size of storage tanks for gasoline.'

"Said ordinance reading as follows: 'Section 1. Be it ordained by the Mayor and City Council of Baltimore, That section 75 of Art. 11 of the Baltimore City Code of 1906, title 'Police Regulations and Prevention of Fires,' sub-title 'Inflammable and Explosive Materials,' be and the same is hereby repealed and reordained with amendments to read as follows:'"

By the ordinance, "the Inspector of Buildings is authorized to grant a permit subject to the approval thereof by the Board of Estimates, to any person or persons, firm or corporation applying, to construct and maintain an automobile storage station, in which naptha or gasoline may be stored by one of the following methods only:

(a) In an iron or steel tank of design and construction approved by the Inspector of Buildings, said tank to be buried underground at least two feet beneath the surface and the maximum amount stored therein shall not exceed one thousand (1,000) gallons, and more than one tank may be permitted upon the same premises."

There follows an alternative method not important here, and a further section providing that any permit granted in pursuance of the provisions of the ordinance may be revoked at any time by the Board of Estimates upon giving ninety days' notice of such revocation to the holder of the permit.

The concluding allegations of the bill are as follows:

"8.   The defendant, the Standard Oil Company, made its application on March 19th, 1924, and said application was approved by the Mayor and the permit was thereupon granted by the defendant, Charles H. Osborne, the inspector of buildings, in pursuance thereof under and by virtue of Ordinance No. 858 hereinbefore referred to.

"On October 14, 1924, the defendant, the Standard Oil Company, made a further application in accordance with Ordinance No. 611½, hereinbefore set forth, to the defendant, Charles H. Osborne, the inspector of buildings, for permission to instal four 1,000 gallon gasoline tanks with pumps upon the said premises, known as 925 Cathedral street and to make certain other alterations and improvements thereon. This application was approved by the defendants, Howard W. Jackson, Mayor of Baltimore City; R. Walter Graham, Howard Bryant, Philip B. Perlman and Bernard L. Crozier, constituting and acting as the Board of Estimates of Baltimore City, under the authority conferred upon them by the said Ordinance No. 611½, and thereupon on November 7, 1924, the said defendant, Charles H. Osborne, the inspector of buildings, granted the permission requested in said application.   Your orators aver and charge that this action on the part of the Board of Estimates in approving and on the part of the building inspector in granting the permission so requested is totally illegal and void, in that Ordinance No. 611½ was passed in violation of section 221 of the Charter of Baltimore City (Revised Edition), which provides that 'every ordinance enacted by the city shall embrace

but one subject, which shall be described in its title, * * *,' and this ordinance is therefore null and void in so far as it purports to repeal the limitation, provided by its predecessor upon the number of tanks permitted upon any one premises, since such repeal is not in any way indicated in its title.

"9. After both of the aforesaid permits were issued by the defendant, Charles H. Osborne, upon approval by the Mayor and the Board of Estimates, respectively, the defendant, the Standard Oil Company, promptly began and has continued the work of preparing the said premises known as 925 Cathedral street, for the installation and establishment of a gasoline service station or automobile filling station thereon.

"10. Further complaining, your orators show unto your Honor that your orators are informed and believe and do aver upon the information and belief that the defendant, the Standard Oil Company of New Jersey, intends to build and construct upon said premises, 925 Cathedral street, in close proximity to the respective residences or other properties of your orators, as a part of the contemplated gasoline filling station, a number of tanks and to store therein large quantities of highly inflammable gasoline, the fumes of which, when mixed with air are apt to be highly explosive; and further that if this defendant is permitted to carry out its intention, the properties of your orators and the persons of those of your orators who dwell thereon will be exposed thereby to grave and increased danger of injury or destruction from fire and explosion, or from either of these causes, and your orators will be greatly restricted in the reasonable use of these properties and these properties will be greatly diminished in value; your orators therefore charge that in view of the locality in which this gasoline is to be stored and the proximity of said tanks to the residences and other properties of your orators, the gasoline filling station will, if its erection and operation be permitted, constitute a nuisance causing special damage and irreparable injury to the property of your orators in said neighborhood."

A demurrer to the bill was filed, and was overruled, as stated by the chancellor, solely because of the averment in the bill that "the Mayor stated that he was powerless to exercise the discretion vested in him and thereby precluded himself from considering the application upon its merits with reference to the protection of the public welfare." In overruling the demurrer, the chancellor filed an opinion deciding against the plaintiffs on all the other averments of the bill. Answers were then filed and testimony was taken; whereupon a decree was passed dismissing the bill of complaint. This appeal is from that decree.

The questions involved in the appeal are:

(*a*) Was the permit issued for the erection of the service station invalid for lack of compliance by the Mayor with Ordinances Nos. 858 and 648?

(*b*) Does Ordinance No. 611½ violate the provision of section 221 of the Charter of Baltimore City that "every ordinance enacted by the city shall embrace but one subject, which shall be described in its title"?

(*c*) Do the proposed filling station and the tanks constitute a nuisance as to the plaintiffs or any of them?

As to the first question, we find that the permit for the service station was approved by the Mayor acting under valid ordinances, and we are unable to find from the evidence that he failed to exercise the discretion vested in him, or that said permit was invalid because of any lack of compliance by him with said ordinances.

As to the second, we find that Ordinance No. 611½ violates section 221 of the Charter of Baltimore City, in that the subject of the ordinance is not properly described in its title and is therefore invalid.

The title is as follows:

"An ordinance to repeal and reordain with amendments, section 75 of Article 11 of the Baltimore City Code of 1906, title 'Police Regulations and Prevention of Fires,' sub-title 'inflammable and explosive materials,' by authorizing an increase in the size of storage tanks for gasoline."

It gives no notice or indication that the proposed ordinance authorizes any change in the number of tanks or that the discretion theretofore vested in the Mayor in regard to the tanks is by the terms of the ordinance shifted to the Board of Estimates; and yet the ordinance does both these things. If the title had said that the purpose of the ordinance was to remove all restrictions as to the quantity of gasoline to be stored in one place for which a permit might be issued it would have correctly described the ordinance in that respect. But the title gives no notice as to this except that the maximum size of tank is to be increased.

It is no answer to this to say that the title, in giving notice that the size of the tank is to be increased, covers the whole matter, because it makes no difference whether 10,000 gallons of gasoline is kept in one tank holding that quantity or in ten tanks holding 1,000 gallons each. Such reasoning is superficial.

What was said in *Painter v. Mattfeldt,* 119 Md. 466, in regard to the title of an act of assembly, applies as well to the title of an ordinance, viz:

"The purposes of this provision of the Constitution are 'to prevent the Legislature from the enactment of laws surreptitously; to prevent 'Log rolling' legislation; to give the people general notice of the character of the proposed legislation; so they may not be misled; to give all interested an opportunity to appear before committees of the Legislature and to be heard upon the advisability of the proposed legislation; to advise members of the character of the proposed legislation and to give each an opportunity to intelligently watch the course of the proposed bill; to guard against fraud in legislation, and against false and deceptive titles. These purposes have been so plainly announced in numerous opinions by this court that a statement of the rule and the citation of cases would seem to be sufficient.' State v. McKinney, 29 Mont. 375; Davis v. State, 7 Md. 160; Drennen v. Banks, 80 Md. 310; Baltimore v. Reitz, 50 Md. 574; County Commissioners

v. School Commissioners of Worcester County, 113 Md. 305.

"But 'though the title need not contain an abstract of the bill, nor give in detail the provisions of the act, it must not be misleading by apparently limiting the enactment to a much narrower scope than the body of the act is made to compass.' Luman v. Hitchens Bros., 90 Md. 14; and it must not be such as to divert attention from the matters contained in the body of the act. State v. Schultz, 83 Md. 58. While this section of the constitution has received a liberal construction, the court has not hesitated to declare many acts invalid which were clear infractions of its purpose. Kafka v. Wilkinson, 99 Md. 238."

It would have been sufficient if the title had referred by number to the ordinance proposed to be repealed and stated that the purpose of the new ordinance was to repeal the old one and to re-enact it with amendments. The members of the council would then have been warned that it would be necessary to examine the whole of the new ordinance to find out what changes were proposed.

But when the title goes beyond this and suggests in what respect it is proposed to amend, the suggestion must be accurate and not deceptive. Members of the council reading the title were notified that the purpose of the ordinance was to repeal the old ordinance and to re-enact it with amendments "by authorizing an increase in the size of storage tanks for gasoline." When they read enough of the ordinance to find that the maximum size was to be increased to 1,000 gallons, they were justified in supposing that 1,000 gallons was the maximum amount which could be permitted in one place, and were not charged with notice that an unlimited amount was permitted by the later provision that "more than one tank may be permitted upon the same premises," as the title had given no warning of this.

Likewise it had given no warning that the Board of Estimates was to be substituted for the Mayor in the matter of approving permits. In these respects the title was

not simply theoretically deceptive, but well calculated to deceive.

The only difference in language between the old and the new ordinance, in referring to the number of tanks is: In the old it is provided that "no more than one tank *shall* be permitted," etc.   While in the new the provision is: "more than one tank *may* be permitted," etc.   In the hurry which often attends the passage of acts and ordinances through legislative bodies, even an experienced legislator might be excused for overlooking such a slight change in words, when he had no warning of the purpose to make such changes.

This ordinance being invalid, the permit granted the company under it was invalid, and the prayers for injunctions as to the tanks should have been granted.

As to the third question, by reason of the finding in regard to the invalidity of Ordinance No. 611½, it becomes unnecessary to decide whether or not the four tanks described in the void permit would have constituted a nuisance as to the plaintiff or any of them, and it remains to consider the question of nuisance in reference only to the service station.

It is difficult to deal with this as a practical proposition, because the service station would be of no use without gasoline; and, with the elimination of the permit for tanks, the station would be without necessary accessories, and in such circumstances it would probably not be erected.   However, as we are called upon to review the ruling of the chancellor in refusing to enjoin the erection of the station, there is nothing for us to do but affirm that ruling; because, clearly, the station would not be a nuisance *per se*.   That under certain conditions, and with certain accessories, it might become a nuisance, would not justify a restraining order, in anticipation, as to the station itself.

We are expressing no opinion as to this question in reference to the situation which would be before us if the permit for four tanks with capacity of 1,000 gallons each had

been granted under a valid ordinance; because we cannot assume either that another ordinance will be passed of a like character; or that, should it be, a like permit would be granted for the installation at this point of tanks with so great a capacity. *Levering v. Supervisors*, 129 Md. 335.

> *Decree affirmed in part and reversed in part and cause remanded that a decree may be passed in conformity with this opinion, costs to be paid by the Standard Oil Company of New Jersey, one of the appellees.*