536 A.2d 641

**MONTGOMERY COUNTY, Maryland et al.**

**v.**

**BOARD OF SUPERVISORS OF ELECTIONS FOR MONTGOMERY COUNTY et al.**

**No. 95, Sept. Term, 1986.**

Court of Appeals of Maryland.

Sept. 19, 1986.

Opinion Feb. 5, 1988.

Joyce R. Stern, Sr. Asst. Co. Atty. (Paul A. McGuckian, Co. Atty., Clyde H. Sorrell, Deputy Co. Atty., Rockville, and Sharon M. Pegnato, pro se, on the brief, of Derwood), for appellant.

Devin John Doolan (Marianne K. Renjilian and Furey, Doolan & Abell on the brief), all of Chevy Chase, for appellee Montgomery County Council.

John P. Diuguid (Diuguid & Epstein, on the brief), Washington, D.C., for appellee Bd. of Supervisors of Elections for Montgomery County.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

### PER CURIAM ORDER

For reasons to be stated in an opinion later to be filed, it is this 19th day of September, 1986

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the judgment of the Circuit Court for Montgomery County is reversed and the Board of Supervisors of Elections for Montgomery County is enjoined from printing proposed Charter amendments B

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

and C on the official ballots to be used at the November 4, 1986 general election; costs to be paid by Montgomery County, Maryland; and it is further

ORDERED that the mandate shall issue forthwith.

ELDRIDGE, Judge.

This opinion sets forth the reasons underlying this Court's earlier order enjoining the Board of Supervisors of Elections for Montgomery County from placing proposed charter questions B and C, amending Sections 215 and 110 of the Montgomery County Charter, respectively, on the official ballot for the November 4, 1986, general election.

The Maryland Constitution, Article XI–A, § 1, provides *inter alia* that a county charter shall be subject to the public general laws of Maryland. If a provision of a county charter, including a charter amendment, conflicts with any public general law, the charter provision may not be given effect. *See East v. Gilchrist*, 296 Md. 368, 374, 463 A.2d 285 (1983), and cases there cited; *Wilson v. Bd. of Sup. of Elections*, 273 Md. 296, 328 A.2d 305 (1974); *Schneider v. Lansdale*, 191 Md. 317, 61 A.2d 671 (1948). This case involves the claimed invalidity of two proposed charter amendments adopted by the Montgomery County Council as part of Resolution 10–2112 on July 29, 1986. Pursuant to Maryland Constitution, Art. XI–A, § 5, setting forth the procedure for amending charters, the resolution was to be submitted to the voters at the November 4, 1986, general election. *See also*, Maryland Code (1957, 1986 Repl.Vol.), Art. 33, §§ 23–1 to 23–11, and § 16–13 of the Montgomery County Code. Resolution 10–2112 contained seven proposed amendments to the Montgomery County Charter. As previously indicated, the two proposed amendments involved in this litigation are to § 215 and § 110 of the Charter.

Existing § 215 provides that the County Executive appoints "all members of boards and commissions unless otherwise prescribed by state law or this Charter." Section

215, under the proposed amendment, would provide that the section should not be construed to authorize the County Executive to appoint members of the Montgomery County Planning Board.[1] Existing section 110 provides that the County's zoning, planning and subdividing powers are exempt from veto by the County Executive. Section 110, under the proposed amendment, would provide that the section should not be construed to authorize the County Executive to veto master plans or master plan amendments that have been approved by the County Council.[2]

On August 11, 1986, "Montgomery County," at the direction of the County Executive, filed this action in the Circuit Court for Montgomery County against the Board of Supervisors of Elections of Montgomery County. Sharon

---

1. Section 215, with the proposed amendment underlined, states as follows:

> "The County Executive, after receiving the advice of the Chief Administrative Officer, shall appoint a single officer to head each principal department, office or agency of the Executive Branch, subject to the confirmation of the Council. Except for commissions appointed to advise the Council, the County Executive shall appoint, subject to the confirmation of the Council, all members of boards and commissions unless otherwise prescribed by state law or this charter."
>
> "This section shall not be construed to authorize the County Executive to appoint members of the Montgomery County Planning Board."

The Montgomery County Planning Board consists of Montgomery County's five members on the Maryland–National Capital Park and Planning Commission. Code (1957, 1986 Repl.Vol.), Art. 28, § 7–111.

2. Section 110, with the proposed new material underlined, reads as follows:

> "In the exercise of powers authorized by any act of the General Assembly or the Constitution of Maryland, other than the law making power vested in it by Article XI–A of the Constitution and the grant of express powers in Article 25A, Annotated Code of Maryland, 1957, the Council shall follow the procedure set forth in such law or section of the Constitution and the exercise thereof shall be effected in the manner prescribed therein. The powers relating to zoning, planning or subdividing shall be exercised by the Council as prescribed by law and the exercise of such powers shall be exempt from veto by the County Executive.
>
> "This section shall not be construed to authorize the County Executive to veto master plans or master plan amendments."

Pegnato, a Montgomery County taxpayer, was also a plaintiff in the action. The plaintiffs sought to enjoin the placement of the two proposed amendments to §§ 215 and 110 on the November 1986 ballot. They also sought declaratory relief in the form of a court order declaring the proposed amendments invalid. On September 2, 1986, the Montgomery County Council was permitted to intervene as a party-defendant.

Before the circuit court, the plaintiffs argued that the two proposed amendments directly conflicted with public general laws. Specifically, the plaintiffs contended that § 215 conflicted with Maryland Code (1957, 1987 Repl.Vol.), Art. 28, § 2–101, which grants to the County Executive the authority to appoint two members of the Planning Commission. Section 110, they stated, conflicted with Code (1957, 1987 Repl.Vol.), Art. 28, § 7–108(d)(2), which grants to the County Executive the authority to veto master plans and master plan amendments, subject to a legislative override. The plaintiffs argued that, because of the conflict with public general laws, the Board of Supervisors of Elections should be enjoined from placing the proposed amendments on the November 1986 ballot and that the proposed amendments should be declared invalid.

On September 4, 1986, the circuit court declared that the proposed charter amendments were not invalid, and it denied the requested injunctive relief.[3] The plaintiffs took an appeal to the Court of Special Appeals, and, before any further proceedings in the intermediate appellate court, all parties petitioned this Court for a writ of certiorari. We issued the writ on September 15, 1986, and advanced oral

---

**3.** The circuit court also ruled that the "County Executive" lacked standing to sue. The circuit court did, however, determine that Ms. Pegnato, a taxpayer residing in Montgomery County, had standing to bring this suit. We do not reach the merits of the court's standing ruling since the case could proceed with Ms. Pegnato as the only plaintiff. *State's Atty v. City of Balto.,* 274 Md. 597, 602, 337 A.2d 92 (1975). *Cf., James v. Anderson,* 281 Md. 137, 142 n. 1, 377 A.2d 865, 868 n. 1 (1977); *Gordon v. City of Baltimore,* 258 Md. 682, 686–687, 267 A.2d 98, 101 (1970).

argument to September 19, 1986. On September 19th, at the conclusion of oral argument, we reversed the judgment of the circuit court and enjoined the Board of Supervisors of Elections from placing the proposed amendments on the ballot.

As previously pointed out, under Art. XI–A of the Maryland Constitution, if a charter amendment conflicts with a public general law, the public general law prevails. The proposed amendment to § 215 of the Montgomery County Charter provides that the section should not be construed to authorize the County Executive to appoint members of the Montgomery County Planning Board. In contrast, a public general law (Art. 28, § 2–101) provides that the County Executive has authority to appoint two members of the Planning Commission. The proposed amendment to § 110 states that the section should not be construed to authorize the County Executive to veto master plans or master plan amendments. In contrast, a public general law (Art. 28, § 7–108(d)(2)) provides that the County Executive has the authority to veto master plans and master plan amendments. Facially, the proposed charter amendments conflict with Art. 28, §§ 2–101 and 7–108(d)(2) of the Maryland Code.

In response to this facial conflict, the defendant Montgomery County Council makes two arguments. The County Council contends that even if there is a conflict with public general law, the proposed charter amendments should nevertheless go on the ballot; if approved by the voters, the new charter provisions would simply be "inoperative" until there was a change in public general law. Alternatively, the County Council asserts that there really is no conflict. In our view, neither argument is meritorious.

A.

The County Council argues that "[e]ven if the Court were to find a *current* conflict ... [between the proposed charter amendments and public general law] the proposed charter amendments should go on the ballot be-

cause they are proper charter material and are, at worst, 'inoperative' until State law changes...." (County Council's brief p. 18). The County Council relies on the following language from *Wilson v. Bd. of Sup. of Elections, supra,* 273 Md. at 302, 328 A.2d 305:

"[I]f there is a conflict between a charter provision and a public general law the charter provision would be inoperative.... A charter provision which is otherwise valid, but inoperative because of such a conflict, would become operative if the conflict were eliminated by the repeal of the public general law. Likewise, a charter provision otherwise valid and operative, because of lack of conflict, would become inoperative if a later public general law created a conflict...."

The County Council reasons that, because a proposed charter amendment in conflict with public general law is not "invalid" but simply "inoperative," under the *Wilson* language a court should never enjoin placing the proposed conflicting charter amendment on the ballot.

The County Council's argument is flatly contrary to Maryland cases. Our cases have consistently taken the position that the submission to the voters of a proposed charter amendment, in conflict with public general law, should be enjoined. *See, e.g., Wilson v. Bd. of Sup. of Elections, supra,* 273 Md. at 300, 328 A.2d 305; *Schneider v. Lansdale, supra,* 191 Md. 317, 61 A.2d 671; *Jones v. Broening,* 135 Md. 237, 108 A. 785 (1919); *Williams v. Broening,* 135 Md. 226, 108 A. 781 (1919); *Montgomery County v. Board of Supervisors of Elections,* 53 Md.App. 123, 451 A.2d 1279, *cert. denied,* 294 Md. 352 (1982).[4]

---

**4.** We recognize that cases in some jurisdictions are to the contrary. Those courts generally require the submission of proposed measures to the electorate before a suit will be entertained. *See, e.g., Bardwell v. Parish Council,* 216 La. 537, 44 So.2d 107 (1949); *Samuelson v. Conrad,* 25 Ohio Misc. 13, 265 N.E.2d 803 (1968); *Mt. Lebanon, Pennsylvania v. County Board of Elections of the County of Allegheny,* 470 Pa. 317, 368 A.2d 648 (1977); *Coleman v. Bench,* 96 Utah 143, 84 P.2d 412 (1938). In the case at bar, the defendant Board of Supervisors of Elections seems to argue that we should overrule the prior

For example, in *Schneider v. Lansdale, supra,* the plaintiffs sought to enjoin the Board of Supervisors of Elections of Montgomery County from submitting a proposed charter to the voters. The plaintiffs claimed that a provision of the proposed charter was inconsistent with State law. The defendants contended that enjoining the submission of the proposed charter violated separation of powers and that, therefore, the Court had no authority to enjoin submission of the charter to the voters. Responding to this argument, the Court stated (191 Md. at 322, 61 A.2d at 673):

> "[W]e have before us the contention ... that the courts cannot interfere with the legislative processes, and that enjoining the submission to the voters of a proposed charter is such interference.... But in this State we have actually passed upon the validity of proposed constitutional or charter amendments, and have enjoined submission of an invalid charter amendment. ... In these cases ... there were presented specific questions, which would necessarily have arisen after approval by the voters and which could just as conveniently be decided before submission as afterwards."

The County Council's reliance upon the language in *Wilson v. Bd. of Sup. of Elections, supra,* 273 Md. at 302, 328 A.2d 305, describing a charter provision in conflict with public general law as "inoperative," is misplaced. *Wilson* was referring to a charter provision that had already been approved by the voters. The provision at issue in *Wilson* was already part of the Baltimore City Charter when this Court decided the *Wilson* case. In such context, it is not inappropriate to refer to an existing charter provision, in conflict with public general law, as "inoperative." Nevertheless, nothing in the *Wilson* opinion supports the view that a court should not enjoin the submission to the voters of a *proposed* charter amendment in conflict with public

Maryland cases, follow the above-cited authorities, and refuse to pass upon proposed ballot measures before the election. We decline to overrule our previous decisions regarding this matter.

general law. More significantly, the *Wilson* opinion itself recognizes that the submission of such proposed amendments will be enjoined. Judge Smith there stated for the Court (273 Md. at 300, 328 A.2d 305):

"This Court has previously entertained taxpayers' suits challenging the validity of proposed amendments to the Charter in which cases our predecessors determined that the submission of such amendments to the voters of Baltimore City should be enjoined. *Williams v. Broening, Mayor*, 135 Md. 226, 108 A. 781 (1919), and *Jones v. Broening, Mayor*, 135 Md. 237, 108 A. 785 (1919). In *Schneider v. Lansdale*, 191 Md. 317, 61 A.2d 671 (1948), the Court considered and held valid, in the face of attack from certain Montgomery County taxpayers, a proposed charter for that county which was slated to be voted upon at the coming general election."

Allowing a vote on proposed charter amendments which, if approved by the electorate, cannot go into effect because they conflict with higher law, would be to sanction "straw votes" on a multitude of public issues or potential issues. As discussed in Part B below, "straw votes" of this nature are not permitted.

Consequently, we reject the County Council's argument that a court should not enjoin the submission to the electorate of a proposed charter amendment which is in conflict with public general law.

### B.

Alternatively, the Montgomery County Council argues that the proposed charter amendments only relate to the proper construction of the Montgomery County Charter and, as such, do not conflict with public general law. The County Council asserts that "these amendments address how the Charter shall be construed with respect to the allocation of powers between coordinate branches of the County government." (County Council's brief p. 17). The Council's argument continues (*id.*, at p. 20):

"The Proposed Charter Amendments are simply clarifications of what the Charter says and does. They do not attempt to interpret, or to negate, what State law has said or done. They do not speak about State law. State law does not speak about construction of the Montgomery County Charter. There is no legal conflict.

"If a majority of the voters vote in favor of the proposed Charter amendments, State law will be unaffected. The *Charter* will say, in effect, that if the County Executive has these powers, he didn't get them here. The *voters* will have said that if the County Executive has these powers, he didn't get them from us. But State law will still say what it says, for as long as it says it; the County Executive will still have the powers he derives from State law for as long as he has them."

The Council goes on to suggest that, if the amendments are approved by the voters, the General Assembly might change state law to reflect the results of the election (*id.* at p. 22).

The County Council's position seems to be that the proposed charter amendments, if approved, would themselves effectuate no change concerning the powers of the County Executive, as that is a matter controlled by state law, and that the only immediate effect of the amendments would be to reflect the sentiment of the voters concerning the state public general law.

If the Council's view of the proposed amendments is correct, the amendments run afoul of the principle that "straw votes" are impermissible in this State. *See Levering v. Supervisors, Etc.,* 129 Md. 335, 99 A. 360 (1916); 61 Op.Atty Gen. 384 (1976). If a county, under the guise of charter amendments negating particular constructions of its charter, could obtain straw votes on issues controlled by state or federal law, county charters could be filled with political sentiments on policy matters going far beyond the proper scope of a local government home rule charter. What was said in *Levering v. Supervisors, Etc., supra,* 129

Md. at 338, 99 A. 360, concerning other state law referenda provisions, is fully applicable here:

"It was not the purpose of these provisions to admit indiscriminately to a place on the official ballots, every issue which any county or municipality of the State might propose to have submitted to a vote of the people.... If it could be held that ... all questions of local interest to a county or municipality must be printed and submitted on the official ballots, when certified by a Board of County Commissioners or by the City Register of Baltimore, it is possible that the processes of a general election might at times be unduly encumbered with such proposals."

Virtually any issue can be couched in the form of negating a particular construction of an existing charter provision. It was not the purpose of Art. XI–A of the Maryland Constitution to allow county charters to be cluttered with advisory sentiments on political issues controlled by state law. *Cf., Griffith v. Wakefield,* 298 Md. 381, 470 A.2d 345 (1984); *Cheeks v. Cedlair Corp,* 287 Md. 595, 415 A.2d 255 (1980).

For the above reasons, this Court previously enjoined the placing on the ballot of the proposed charter amendments in this case.