483 A.2d 1272

The NATIONAL COLLEGIATE ATHLETIC ASSOCIATION

v.

The JOHNS HOPKINS UNIVERSITY.

No. 29, Sept. Term, 1984.

Court of Appeals of Maryland.

Nov. 28, 1984.

Daniel R. Chemers, Baltimore (Peter A. Cotorceanu and Weinberg & Green, Baltimore, on brief, and George H. Gangwere, Kansas City, Mo., on brief and of counsel), for appellant.

Estelle A. Fishbein, Baltimore (Carolyn W. Kone, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

COUCH, Judge.

In this appeal we consider whether the Circuit Court For Baltimore City (Ward, J.) erred in permanently enjoining the National Collegiate Athletic Association (NCAA) from taking any action, under Sec. 10 [1] of its Enforcement Program,

---

**1.** Section 10. If a student-athlete who is ineligible under the terms of the constitution, bylaws or other legislation of the Association is permitted to participate in intercollegiate competition contrary to such NCAA legislation but in accordance with the terms of a court restraining order or injunction operative against the institution attended by such student-athlete or the Association, or both, and said injunction is subsequently voluntarily vacated, stayed, reversed or finally determined by the courts that injunctive relief is not or was not justified, the Council may take any one or more of the following actions against such institution in the interest of restitution and fairness to competing institutions:

(a) Requirement that individual records and performances achieved during participation by such ineligible student-athlete shall be vacated or stricken;

(b) Requirement that team records and performances achieved during participation by such ineligible student-athlete shall be vacated or stricken;

(c) Requirement that team victories achieved during participation by such ineligible student-athlete shall be abrogated and the games or events forfeited to the opposing institutions;

against The Johns Hopkins University (University). Under the facts, as presented by the record, we hold the circuit court erred and thus we reverse.

In *The National Collegiate Athletic Ass'n v. Tucker*, 300 Md. 156, 476 A.2d 1160 (1984) (dismissed as moot), a case originally heard by Judge Baylor, we set forth the facts which provided the genesis for the present controversy, and they will not be repeated here except as to provide continuity from that case to the present appeal.

While the appeal of the NCAA in *Tucker, supra,* was pending, the University, on April 5, 1984, filed a cross-claim against the NCAA in Tucker and Carswell's action; the University also filed, in the same action, a petition against the NCAA. In its cross-claim the University sought (1) a declaration that Sec. 10 of the NCAA Enforcement Program was void as against public policy; and (2) an injunction

(d) Requirement that individual awards earned during participation by such ineligible student-athlete shall be returned to the Association, the sponsor or the competing institution supplying same;

(e) Requirement that team awards earned during participation by such ineligible student-athlete shall be returned to the Association, the sponsor or the competing institution supplying same;

(f) Determination of ineligibility for one or more NCAA championships in the sports and in the seasons in which such ineligible student-athlete participated;

(g) Determination of ineligibility for invitational and post-season meets and tournaments in the sports and in the seasons in which such ineligible student-athlete participated;

(h) Requirement that the institution shall remit to the NCAA the institution's share of television receipts (other than the portion thereof shared with other conference members) for appearing on any television series or program subject to the administration of the NCAA if such ineligible student-athlete participates in the contest(s) selected for such telecast, or if the Council concludes that the institution would not have been selected for such telecast but for the participation of such ineligible student-athlete during the season of the telecast; any such funds thus remitted shall be devoted to the NCAA postgraduate scholarship program, and

(i) Requirement that the institution which has been represented in an NCAA championship by such a student-athlete shall return its share of the net receipts from such competition in excess of the regular expense reimbursement, or if said funds have not been distributed, requirement that they be withheld by the NCAA executive director.

enjoining and restraining the NCAA from imposing any sanctions against it for its compliance with the interlocutory injunction issued allowing Tucker and Carswell to play lacrosse. In its petition the University sought a preliminary and final injunction against the NCAA restraining it from applying any sanctions against the University; it also prayed that the NCAA be enjoined from "attempting to adversely influence, deter or interfere with the issuance of invitations to the Johns Hopkins University to participate in invitational, post season meets and tournaments in the sport of lacrosse to which the University otherwise would be entitled by reason of its win/loss record and ranking."

The record further shows that a show cause order[2] was issued by Judge Ward on the petition April 5, 1984 giving the NCAA until April 11, 1984 to answer, providing service was effected by April 6, 1984. We were told at oral argument that there were two chambers conferences held with Judge Ward and the various attorneys which were not recorded so that it is not clear to us what transpired. This becomes important as the attorneys for the NCAA and the University do not agree as to the intended scope of the hearing Judge Ward set for April 13, 1984.

Regardless of the dispute between counsel, from our review of the record we glean that Judge Ward intended to hear all outstanding issues and motions at the April 13th hearing, and not just the issues addressed by his show

---

2. Former Md.Rule of Procedure 324 pertained to show cause orders. (Rule 324 was rescinded effective July 1, 1984 by order of this Court dated April 6, 1984. See Md.Code (1957, 1984 Repl.Vol.), Maryland Rules, Vol. 1, Orders Adopting Rules of Practice and Procedure, at 129–30.) Under Rule 324, a show cause order shall not be issued as of course, Rule 324(b)(1), but if reasonably necessary the court may issue such an order, Rule 324(b)(2). In any event, absent a finding that irreparable damage will ensue, the order shall not require a response in less than ten days after service. Rule 324(b)(3). In this appeal, the trial judge summarily issued the show cause order, thus shortening the appellant's response time, without making a finding of impending irreparable damage to the University.

cause order of April 5.[3] The attorney for NCAA, on the other hand, believed the hearing would concern the University's motion for an interlocutory injunction.[4] As to the University, its attorney stated on the record that she was before the court on a motion for preliminary injunction in a declaratory judgment action. Never was there more than a short discussion with respect to Sec. 10 being void as against public policy.

Furthermore, it is not at all clear that Judge Ward declared the rights of the parties as required under our cases. *See Donnelly Adv. Corp. v. Mayor of Baltimore,* 279 Md. 660, 370 A.2d 1127 (1977) and *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 320 A.2d 266 (1974).

Turning now to the sole issue before us, in our view Judge Ward erred in granting a permanent injunction. We explain.

---

**3.** With reference to the cross-claim, there is no explanation given for why the usual 15 day rule (former Rule 307, now Rule 2–321) was not allowed.

**4.** Because their witnesses were from out of state, NCAA requested, and apparently received, permission from the court to present those witnesses at a later date. The following colloquy took place between bench and bar:

"THE COURT: I'm disposed to go ahead and allow you to present your facts, and we're then going to take all testimony, all motions and all arguments on this case today."

\*  \*  \*  \*  \*  \*

"MR. CHEMMERS: Your Honor, I would like to just object to the notion that we will be proceeding potentially based upon a proposed amendment that comes in this morning with a witness in this afternoon, with no notice to the NCAA.

"THE COURT: No. I told you yesterday that I was going to consider this. I made that very clear to you in chambers. I couldn't have made it more clear to you.

"MR. CHEMMERS: I believe you also advised me that we could put on testimony in rebuttal.

"THE COURT: Yes. I said I was going to give you the opportunity to also put on testimony. However, we weren't discussing this particular item when I said that. But I am going to give you the opportunity to put on testimony.

"MR. CHEMMERS: Thank you, Your Honor."

It is evident Judge Ward misinterpreted the standard for issuing a permanent, rather than an interlocutory, injunction.   Maryland Rule BB70 states in part:

"c.   *Interlocutory Injunction.*

'Interlocutory injunction' means an injunction granted after an adversary hearing on the propriety thereof, but *before* a determination of the merits of the action.

d.   *Final Injunction.*

'Final injunction' means an injunction final or permanent in its nature granted *after* a determination of the merits of the action."   [Emphasis added.]

■   The difference, then, between an interlocutory injunction and a permanent one is whether there has been a determination on the merits of the claim.   If that determination has been made, then the injunction may be final; if not, it is interlocutory.   *See also* Miller, Equity Proceedings § 570, at 677–78 (1897) [footnotes omitted] ("An interlocutory injunction is one which is to continue in force until a specified period, or until the further order of the court; it is provisional in its nature and does not finally conclude the rights of the parties.   A final injunction is one which is made after a hearing of a case on its merits, and usually forms part of a final decree ....").

■   In this appeal, the record shows there never was a determination on the merits.   Following a one day hearing, part of which focused upon the efforts of the original plaintiffs, Tucker and Carswell, to add a new party plaintiff (a Towson State University student lacrosse player) and a new party defendant (Towson State University), the judge issued an interlocutory injunction.   It stated in part:

"THEREFORE, the National Collegiate Athletic Association is restrained from imposing any sanctions against The Johns Hopkins University and/or its athletic department on account of the Order of this Court of the 28th of March, 1984, either during its pendency or retroactively should such order be later vacated following a determination as to the merits of this case."

At a later date and with no further formal proceedings, the judge inserted the word "permanently" between "is" and "restrained". However, it is not clear that he ever made any determination on the merits of Hopkins' cross-claim—that is, whether Section 10 is void because of public policy. Without a determination on the merits, the permanent injunction is invalid. Md.Rule BB70(d).

Furthermore, NCAA contends its due process rights were violated in that it was required to answer and show cause against the injunction in less than the time permitted by the Maryland Rules. In addition, it alleges it was denied the full opportunity to be heard when the trial judge promised it an opportunity at a later date to present witnesses, and then rendered his decision without hearing those witnesses. We need not address this issue since it is obvious, as we have previously discussed, that the procedure adopted by the trial judge violated Maryland Rule BB70(d) and former Rule 307 (now Rule 2–321).

Finally, it is apparent to us that Judge Ward misconstrued the effect of Judge Baylor's order granting an interlocutory injunction allowing Tucker and Carswell to play lacrosse for the rest of the season. In the original claim in this suit, Tucker and Carswell were challenging the NCAA's interpretation of what constituted a "season" for purposes of playing lacrosse. Judge Baylor, who heard the original claim, concluded that there was a likelihood of success on the merits of Tucker and Carswell's Bill of Complaint and that a denial of relief would result in irreparable injury to the players.

As to the proceedings before Judge Ward, the issue was whether Sec. 10 sanctions were void for public policy reasons and whether an injunction should issue to stop NCAA's future utilization of those sanctions. It appears from the record, however, that Judge Ward believed the Sec. 10 issue had already been decided. At a point near the end of the April 13th hearing before Judge Ward, NCAA

summarized its argument for upholding Section 10.  Judge Ward then stated:

"Well, that argument applies more to Judge Baylor than to me.  Maybe I would have reached a different decision in the beginning of this case, because I'm not inclined to interfere in the governing bodies of other outside institutions [NCAA].

I think judges' powers are not as great as maybe they think they are.

But it has occurred, and the decision has been made, and now I've got to decide this last point."

At the close of the hearing, Judge Ward declared:

"I find that the finding of Judge Baylor of a likelihood of success is the law in the case.  Therefore, it is not my determination, but his, that guides with respect to that."

■ Thus it seems Judge Ward treated the order of Judge Baylor as the law of the case so far as the issue of Section 10 sanctions was concerned.  That issue, however, never had been ruled upon by Judge Baylor.[5]

In this instance, Judge Baylor issued an interlocutory injunction which permitted Tucker and Carswell to play lacrosse, while the issue before Judge Ward regarded Section 10 sanctions.  Therefore, we believe Judge Ward was confused as to the issue determined by Judge Baylor.  Consequently, when Judge Ward applied the law of the case, he erred.

ORDER OF APRIL 13, 1984 VACATED;  CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.  COSTS TO BE PAID BY APPELLEE, THE JOHNS HOPKINS UNIVERSITY.

---

**5.** Judge Ward's confusion as to the issues before him may well have been due to the fact that the transcript and record in the case had been forwarded to Annapolis for the appeal.  Thus he had little, if any, information available to him concerning the background of the case.