949 A.2d 639

**Betty GARNER, et al.**

v.

**ARCHERS GLEN PARTNERS, INC., et al.**

**No. 126, Sept. Term 2007.**

Court of Appeals of Maryland.

June 9, 2008.

44

G. Macy Nelson (Paul N. De Santis, on the brief), Towson, for petitioners.

Megan M. Bramble (Teri Spradlin-Dahn of Rifkin, Living-ston, Levitan & Silver, LLC, on the brief), Greenbelt, for respondents.

M. Andree Green (George R.H. Johnson, on the brief), Upper Marlboro, for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, specially assigned) IRMA S. RAKER, (Retired, specially assigned) DALE R. CATHELL, (Retired, specially assigned), JJ.

HARRELL, Judge.

■ This case recalls the admonition that an appellate court should use great caution in exercising its discretion to comment gratuitously on issues beyond those necessary to be decided. Heeding that principle, we shall decide only the questions of law integral to the necessary holdings in the instant case, based on the questions properly presented in the successful petition for certiorari.

On 24 September 2002, Washington Management and Development Company, Inc.,[1] applied to the Prince George's County Planning Board of the Maryland–National Capital Park and Planning Commission (the "Commission") for approval of a preliminary plan of subdivision (the "Preliminary Plan") for 47 residential lots[2] in Prince George's County.[3]

---

1. Although it is somewhat unclear from the record before us, it appears that Archers Glen Partners, Inc., owned the land for which a subdivision application was filed that triggered this litigation. Archers Glen subsequently acquired Washington Management and Development Company's interest in the project. Archers Glen Partners is the party of record in this appeal and will be referred to as the "Developer" in this opinion.

2. The Preliminary Plan provides for the creation of 46 undeveloped residential lots and one lot to support an existing dwelling.

3. Maryland Code, (1957, 2003 Repl.Vol.) Article 28, § 7–115(a) requires that any proposed subdivision of land within the "regional district," as defined by Article 28, § 7–103, must be approved by the Commission. The Commission, in making its determinations, applies the subdivision

The proposed subdivision (the "Property") consisted of 236.45 acres along Bald Eagle Road and is located in the so-called planned Rural Tier of Prince George's County, as defined by the 2002 Prince George's County Approved General Plan (the "General Plan").[4,5] The Planning Board approved the Prelimi-

---

regulations of Prince George's County for subdivision proposals in that County. Maryland Code, (1957, 2003 Repl.Vol.) Article 28, §§ 7 –116, 7–117; *see also Coffey v. Md.-Nat'l Capital Park & Planning Comm'n*, 293 Md. 24, 30–31, 441 A.2d 1041, 1044 (1982) (holding that the Commission acted properly in denying a proposed subdivision plan where the subdivision did not comply with the applicable master plan where the subdivision regulations required such compliance).

4. The current General Plan parses the land mass of Prince George's County into three tiers: the Developed Tier; the Developing Tier; and the Rural Tier.

5. Although we shall not decide here any issue regarding the legal effect of the recommendations of the General Plan in the subdivision review process, the parties' apparent dispute over that point looms in the background. In an effort to address its "Smart Growth" policies, the Prince George's County Council, sitting as the District Council for that part of the regional district in the County, in 1998, created "Commission 2000," a 53–member panel, to study and recommend a new comprehensive growth management plan. The final product of the work of Commission 2000, the Biennial Growth Policy Plan, served as an interim planning document until the former General Plan could be amended companionably. "The approved General Plan builds on recommendations of the Biennial Growth Policy Plan adopted by the Prince George's County Council in November 2000 and prepared with the assistance of Commission 2000. . . . The preliminary General Plan was released in February 2002, adopted by the Planning Board in May 2002, and approved by the Prince George's County Council, sitting as the District Council, in October 2002." Foreword, 2002 Prince George's County Approved General Plan.

An "area master plan" differs from the General Plan. Master plans govern a specific, smaller portion of the County and are often more detailed in their recommendations than the countywide General Plan as to that same area. In the present case, the Property lies in Planning Area 87A, addressed by the Subregion VI Study Area Approved Master Plan (1993) (the "Master Plan"). Prince George's County Code § 27–684.

The relationship between the various levels of planning and regulation-the subdivision regulations, the Master Plan, the General Plan, and the Biennial Growth Policy Plan-is disputed by the parties. Petitioners contend that the General Plan imposed binding requirements which must be complied with if the Preliminary Plan is to be approved. The Developer and the Commission see it otherwise. Prince George's

nary Plan at a hearing on 20 February 2003, subject to certain conditions not relevant here. The Planning Board expressed its approval and the bases therefore in a Resolution adopted on 27 March 2003.

A group of area residents, individually and collectively referred to as the Greater Baden Aquasco Citizens Association (collectively, "Petitioners"), filed, in the Circuit Court for Prince George's County, a petition for judicial review of the Commission's action. The Circuit Court affirmed the decision of the Planning Board. Petitioners appealed to the Court of Special Appeals. In an unreported opinion (hereinafter referred to as *Archers Glen I*, for convenience), a panel of the intermediate appellate court held that the Planning Board

---

County Code § 24–121(a)(5) states that a proposed subdivision "plat shall conform to the area master plan, including maps and text, unless the Planning Board finds that events have occurred to render the relevant plan recommendations no longer appropriate or the District Council has not imposed the recommended zoning." Thus, it is clear that the Preliminary Plan must conform to the recommendations in the Master Plan. That section, however, does not expressly require conformance to the General Plan. Prince George's County Code § 24–104(a)(2) notes, perhaps in contrast to § 24–121(a)(5), that the purposes of the subdivision regulations are to "guide development *according to the General Plan*, area master plans, and their amendments." (emphasis added). Furthermore, the Master Plan states that, with certain exceptions not applicable here, the "Subregion VI Study Area Master Plan is in accordance with the General Plan."

The relationship between the various planning and regulatory documents is not without practical significance. Most relevant to the present case, the various plans potentially conflict on the amount of growth that should be permitted in the Rural Tier designated areas of Prince George's County. The Biennial Growth Policy Plan states as a "Growth Objective" that Prince George's County should "[s]low dwelling unit growth within the Rural Tier to *0.75 percent* of total Countywide dwelling unit growth over the next 20 years." (emphasis added). By contrast the "growth objective of the [General Plan] is that 33 percent of the county's residential growth over the next 25 years is to be located in the Developed Tier, 66 percent in the Developing Tier, and *one percent in the Rural Tier*." (emphasis added) Executive Summary, 2002 Prince George's County Approved General Plan. The Subregion VI Study Area Approved Master Plan contains no objective or requirement regarding the percentage of countywide growth that should take place in the Rural Tier within its portion of the County. Nonetheless, the Master Plan notes that it "is in accordance with the General Plan."

failed to articulate sufficiently the findings in support of its conclusion that the Preliminary Plan conformed to the recommendations of the Master Plan. The Court of Special Appeals vacated the Circuit Court's judgment and directed that the case be remanded to the Planning Board for further proceedings. Although "[r]esolving [the] issue [was] unnecessary" to the intermediate appellate court's holding, the court chose to comment on the parties' dispute regarding "whether the Planning Board was required to consider the subdivision['s] compliance with both the General Plan and the Master Plan, or only the Master Plan."

In an attempt to avoid the expense and delay of additional appeals, we offer the following guidance for the parties to the action on remand. *See* Md. Rule 8–131(a).[6] We first address whether the subdivision plan must comply with both the General Plan and Master Plan, or only the Master Plan.

In Prince George's County, development is guided by a county-wide General Plan, which operates in concert with several subregion-specific Master Plans. In land use cases generally, neither type of plan imposes mandatory criteria with which plans such as the Developer's must comply, but in Prince George's County, § 24–121(a)(5) of the County Code's Subdivision Regulations requires subdivision plans to "conform to the area master plan." *See Coffey v. Md.-Nat'l Capital Park & Planning Comm'n*, 293 Md. 24[, 441 A.2d 1041] (1982). That section of the code, however, does not expressly state that subdivision plans must conform to the General Plan, as opposed to the Master Plan. On the basis of that omission, appellees argue that subdivision plans need not conform to the General Plan. Appellants present no

---

**6.** Maryland Rule 8–131(a) states:

The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

counter-argument, but they argue that appellees' theory amounts to an after-the-fact rationalization that did not form the basis of the Planning Board's decision.

Section 24–103(a) of the Subdivision Regulations declares, "It is ... the policy of Prince George's County to consider the subdivision of land ... as subject to the control of the County, pursuant to the General Plan, for the orderly, planned, efficient, and economical development of the County." (Emphasis added.) Section 24–104(a)(2) then states that one of the purposes of the Subdivision Regulations is "[t]o guide development according to the General Plan, area master plans, and their amendments." Clearly, the General Plan was intended, in some way, to guide the subdivision of land in Prince George's County, notwithstanding the absence of the phrase "General Plan" from § 24–121(a)(5).

The Master Plan, which all parties agree does apply to this subdivision, provides, "The Subregion VI Study Area Master Plan is in accordance with the General Plan, with the exception of the following which constitute amendments thereto." Thus, the Master Plan accepts the planning policies of the General Plan as being appropriate guides to development in the particular subregion, and to the extent that the General Plan's guidance is inappropriate for a locality, the Master Plan rejects and amends the General Plan.

Given the policies and purposes of the Subdivision Regulations, as stated in §§ 24–103(a) and 24–104(a)(2), that subdivision developments in Prince George's County be guided by the General Plan, it would make little sense if, under § 24–121(a)(5), compliance with the General Plan were not a prerequisite to subdividing land.

Under appellees' theory, those portions of the General Plan with which the Master Plans did not disagree (i.e., those portions that were appropriate for the subregion), and therefore did not amend, would not be applied to subdivision plans. This nonsensical result is eliminated by the explanatory language in the Master Plan: "The ... Master Plan **is in accordance with the General Plan,** with the exception

of the following which constitute amendments thereto."
(Emphasis added.) By that statement, the Master Plan
expressly incorporates into itself the substance of the Gen-
eral Plan (except as amended by the Master Plan), thereby
retaining, for application to subdivisions under § 24–
121(a)(5), those portions of the General Plan deemed appro-
priate to the subregion.

*The parties apparently did not litigate this issue before
the Planning Board, and the Board did not expressly
decide the issue in its decision. Because we are vacating
the judgment and remanding the case, ultimately, to the
Planning Board, and given the fact that the issue was not
litigated within the Planning Board, we find it unneces-
sary, and inappropriate under the circumstances, to defini-
tively resolve how the General Plan should apply under the
Subdivision Regulations. Pursuant to our remand, the
parties will have an opportunity to revisit this issue in
light of the above comments.* (Emphasis added).

On remand, the Planning Board held another public hear-
ing, on 23 June 2005, regarding the Preliminary Plan. Fol-
lowing the hearing, the Planning Board approved the Prelimi-
nary Plan anew, again with certain conditions not relevant
here. On 29 September 2005, the Planning Board adopted an
Amended Resolution evidencing the reasons for its approval of
the Preliminary Plan.

Petitioners filed a second petition for judicial review in the
Circuit Court. The Developer and the Commission responded
to the petition, indicating their intent to participate in the
litigation. On 2 June 2006, the Circuit Court remanded the
case to the Planning Board for "further specific and factually
supported consideration[s] and findings" regarding the Pre-
liminary Plan's conformance to the recommendations of the
General Plan as "incorporated in the Master Plan when not
thereby contradicted or amended." Specifically, the Circuit
Court held that the Planning Board needed to make specific
findings regarding the "number of new dwelling units con-
structed and projected to be constructed between 2000 and
2025 in the whole of Prince George's County; the number of

dwelling units already approved for construction in the Rural tier of Prince George's County; and whether the addition of 46 new dwelling units in the Rural Tier will cause growth in the Rural Tier since 2000 to exceed 0.75–1.00% of overall projected dwelling unit growth." The Developer and the Commission jointly filed a timely Notice of Appeal to the Court of Special Appeals.

A panel of the Court of Special Appeals different than the one that decided *Archers Glen I* reversed the judgment of the Circuit Court, in a reported opinion. *Archers Glen Partners, Inc. v. Garner,* 176 Md.App. 292, 933 A.2d 405 (2007) (*Archers Glen II* ). In the Court of Special Appeals on this occasion, Petitioners argued for the first time that the Commission lacked standing to participate in the judicial review of its own decision. The intermediate appellate court disagreed.

Petitioners also contended that the Court of Special Appeals's unreported opinion in *Archers Glen I* discussing the potential legal effect to be accorded the General Plan in the subdivision process (*supra* at 50–51, 494 A.2d at 643–44) served as the "law of the case," and thus, the recommendations of the General Plan were binding on the Planning Board in considering and acting on the Preliminary Plan. The intermediate appellate court, however, held, in *Archers Glen II,* that *Archers Glen I* did not decide the issue of whether the General Plan was binding, and thus, the law of the case doctrine did not apply. The Court of Special Appeals went on to hold that the Planning Board had "discretion to determine whether the preliminary subdivision plan conformed . . . to the goals, objectives, policies, and strategies in the General Plan." Finally, the Court of Special Appeals concluded that the Planning Board's approval of the Preliminary Plan was supported by substantial evidence.

We granted Petitioners' petition for a Writ of Certiorari to consider only two questions, which we rephrase slightly:

1. May the Prince George's County Planning Board participate as a party in a judicial review of its decision approving a Preliminary Plan for a residential development?

2. Does the law of the case doctrine apply to a Court of Special Appeals's opinion in the same proceeding which addresses a legal question pursuant to Md. Rule 8–131(a) in order to provide "guidance" and "to avoid the expense and delay of additional appeals"?

*Garner v. Archers Glen,* 403 Md. 304, 941 A.2d 1104 (2008).

### Standing of the Commission

■ The issue of the Commission's standing has not been preserved. Petitioners did not raise the issue of standing in the Circuit Court, either in *Archers Glen I* or *Archers Glen II.*[7] Maryland Rule 8–131(a) provides that "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." *See Dorsey v. Bethel A.M.E. Church,* 375 Md. 59, 71, 825 A.2d 388, 395 (2003) ("[A]ny dispute concerning [the plaintiffs'] standing should have been raised and litigated in the Circuit Court, not the Court of Special Appeals."); *Sugarloaf Citizens' Ass'n v. Dep't of Env't,* 344 Md. 271, 292, 686 A.2d 605, 616 (1996) (stating that the "judicial standing issue should be adjudicated by the circuit court 'through a motion or other pleading filed by [an adverse party] to dismiss [petitioner] as a party, [petitioner's] answer thereto, and testimony if need be on the point'") (quoting *Morris v. Howard Res. & Dev. Corp.,* 278 Md. 417, 424–25, 365 A.2d 34, 38 (1976)); *Bowman Group v. Moser,* 112 Md.App. 694, 698, 686 A.2d 643, 645 (1996) ("Bowman admits that the question of standing was not raised in the circuit

---

7. We need not decide whether the Petitioners failure to raise the standing claim in *Archers Glen I* became the law of the case for present purposes. *See Reier v. State Dept. of Assessments & Taxation,* 397 Md. 2, 21, 915 A.2d 970, 981 (2007) (stating that litigants " 'cannot, on the subsequent appeal of the same case raise any question that could have been presented in the previous appeal on the then state of the record, as it existed in the court of original jurisdiction' ") (quoting *Fid.-Balt. Nat'l Bank & Trust Co. v. John Hancock Mut. Life Ins. Co.,* 217 Md. 367, 371–72, 142 A.2d 796, 798 (1958)).

court. After examination of the record, we choose not to exercise our discretion and decline to review the issue of Moser's standing to contest the rezoning.").

Petitioners conceded at oral argument before us that a challenge to the standing of the Commission was not raised in the Circuit Court, but argued that the Developer and the Commission had not asserted Petitioners' waiver of the standing challenge in the Court of Special Appeals in *Archers Glen II.* In essence, according to Petitioners, the Commission and the Developer waived their right to assert Petitioners' waiver as a defense to the Commission's lack of standing.

■ It "is a settled principle of Maryland law that, 'where there exists a party having standing to bring an action . . . we shall not ordinarily inquire as to whether another party on the same side also has standing.'" *Sugarloaf Citizens' Ass'n v. Dep't of Env't,* 344 Md. 271, 297, 686 A.2d 605, 618 (1996) (quoting *People's Counsel v. Crown Dev. Corp.,* 328 Md. 303, 317, 614 A.2d 553, 559–60 (1992)); *Dorsey,* 375 Md. at 67 n. 1, 825 A.2d at 392–93 n. 1; *Md. Ass'n of Health Maint. Orgs. v. Health Servs. Cost Review Comm'n,* 356 Md. 581, 589–90, 741 A.2d 483, 487 (1999); *Coalition for Open Doors v. Annapolis Lodge No. 622, Benevolent & Protective Order of Elks,* 333 Md. 359, 371, 635 A.2d 412, 417 (1994); *County Council v. Md. Reclamation,* 328 Md. 229, 232 n. 1, 614 A.2d 78, 80 n. 1 (1992); *Bd. of Supervisors of Elections of Anne Arundel County v. Smallwood,* 327 Md. 220, 233 n. 7, 608 A.2d 1222, 1228 n. 7 (1992); *Bd. of License Comm'rs for Montgomery County v. Haberlin,* 320 Md. 399, 404, 578 A.2d 215, 217 (1990); *Montgomery County v. Bd. of Supervisors of Elections for Montgomery County,* 311 Md. 512, 517 n. 3, 536 A.2d 641, 643 n. 3 (1988); *State's Attorney of Balt. v. City of Balt.,* 274 Md. 597, 602, 337 A.2d 92, 96 (1975). Our traditional reluctance to address issues of standing not necessary to the outcome of a case is highlighted in *Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal Authority,* 323 Md. 641, 650 n. 6, 594 A.2d 1115, 1119 n. 6 (1991). There we declined to address a possible standing issue because it was unnecessary,

noting "[i]n light of our decision on the merits, we need not and do not reach any issue of standing."

 In the present case, Petitioners concede that "the Developer has standing to appeal." We ordinarily do not decide issues of standing not raised in the trial court. Similarly, we ordinarily do not decide issues of standing where it is undisputed that one party on each side of the litigation has standing. Thus, we decline Petitioner's invitation to address the issue of standing where unnecessary to do so in order to decide the outcome of the case.

### The Law of The Case

 Petitioners contend that the noted portion from the Court of Special Appeals's unreported opinion in *Archers Glen I, supra* at 4–6, directed to the legal effect of the General Plan in the subdivision review process, established the "law of the case" and bound the Commission on remand. The " 'law of the case doctrine is one of appellate procedure.' " *Scott v. State,* 379 Md. 170, 183, 840 A.2d 715, 723 (2004) (quoting *Goldstein & Baron Chartered v. Chesley,* 375 Md. 244, 253, 825 A.2d 985, 990 (2003)). "[O]nce an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case." *Scott,* 379 Md. at 183–84, 840 A.2d at 723.

> "Once this Court has ruled upon a question properly presented on an appeal, or, if the ruling be contrary to a question that could have been raised and argued in that appeal on the then state of the record, as aforesaid, such a ruling becomes the 'law of the case' and is binding on the litigants and courts alike, unless changed or modified after reargument, and neither the question decided nor the ones that could have been raised and decided are available to be raised in a subsequent appeal."

*Loveday v. State,* 296 Md. 226, 229, 462 A.2d 58, 59 (1983) (quoting *Fid.-Balt. Nat'l Bank & Trust Co. v. John Hancock Mut. Life Ins. Co.,* 217 Md. 367, 372, 142 A.2d 796, 798 (1958)).

"It is well settled that the law of the case doctrine does not apply when one of three exceptional circumstances exists: the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision on the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Turner v. Hous. Auth. of Balt.*, 364 Md. 24, 34, 770 A.2d 671, 677 (2001) (internal quotation omitted).

In *Archers Glen I,* however, the Court of Special Appeals did not decide the issue of whether the General Plan was a binding document in the subdivision review process in Prince George's County. *Archers Glen I* is clear that its limited reflection on the role of the General Plan is not binding on the parties.

Because we are vacating the judgment and remanding the case, ultimately, to the Planning Board, and given the fact that the issue [of whether the General Plan's recommendations were binding] was not litigated within the Planning Board, we find it unnecessary, and inappropriate under the circumstances, to definitively resolve how the General Plan should apply under the Subdivision Regulations. Pursuant to our remand, the parties will have an opportunity to revisit this issue in light of the above comments.

The panel of the Court of Special Appeals in *Archers Glen I* self-described its discussion of the General Plan as "the above comments *[i.e.,* dicta]," stating that the parties could litigate the issue on remand, and noted that the issue was not "definitively resolve[d]." Petitioners ask us to hold, contrary to the express language in *Archers Glen I,* that *Archers Glen I* definitively resolved the issue and that the Commission and Developer were precluded from litigating the issue administratively or judicially on remand thereafter. *See Hagez v. State,* 131 Md.App. 402, 418–19, 749 A.2d 206, 215 (2000) (" 'Whatever, therefore, has been *definitely* decided by this Court in the prior appeals should be regarded as settled ....' ") (quoting *Cohill v. Chesapeake & Ohio Canal Co.,* 177 Md. 412, 421–22, 10.A.2d 316 (1939)).

█ Even if Petitioners' application of the "law of the case" doctrine in the circumstances of this case were correct (which we do not concede it would be), it is clear that, in Maryland, dicta not adopted as a final determination may not serve as the binding law of the case. *See NCAA v. Johns Hopkins Univ.*, 301 Md. 574, 582, 483 A.2d 1272, 1276 (1984) (holding that a trial judge erroneously applied the law of the case doctrine regarding an issue that had not been decided by another court); *Donaldson v. Raborg*, 28 Md. 34, 53 (1867) ("[W]e find nothing in the opinion of this Court on the former appeals indicating a purpose to debar the parties from raising the questions now presented, by further proceedings in the Orphans' Court."); *Hagez*, 131 Md.App. at 419, 749 A.2d at 215 ("On the other hand, the trial court obviously [is] not bound by points that [were] never decided."); *Davis v. Goodman*, 117 Md.App. 378, 406, 700 A.2d 798, 811 (1997) ("Obviously, the law of the case doctrine can have no application concerning an issue that was never decided."); *Curtis v. State*, 37 Md.App. 459, 468, 381 A.2d 1166, 1171 (1977), *reversed on other grounds*, 284 Md. 132, 395 A.2d 464 (1978) ("Any speculation as to what his expectations of relief might be upon some later post conviction petition, which petition had never been taken and the merits of which were therefore not before the court, was gratuitous dictum made in passing and was not the law of the case.").

This distinction, in some form or another, is followed in most jurisdictions. *See Carson Harbor Vill., Ltd. v. Unocal Corp.*, 287 F.Supp.2d 1118, 1131 n. 40 (C.D.Cal.2003), *aff'd*, 433 F.3d 1260 (2006) ("[T]he Ninth Circuit's observation that the waste was a by-product of petroleum production was not necessary to any of its holdings, and does not constitute law of the case."); *Stewart v. ATEC Assocs., Inc.*, 652 So.2d 270, 273 (Ala.Civ.App.1994) ("However, the appellate court's mandate extends only to language necessary to the holding; all other matters are but dicta and are not controlling upon issues not directly before the court. Thus, like an appellate court reviewing a case for the second time, a trial court acting on remand is not necessarily bound to carry out literally the dicta

pertaining to questions that have not been presented to the appellate court." (Citations and quotations omitted)); *Wilder v. Whittaker Corp.*, 169 Cal.App.3d 969, 215 Cal.Rptr. 536, 538 (1985) ("The general rule is that the [law of the case] doctrine does not extend to ... points not necessary to the prior disposition."); *Dacey v. Conn. Bar Ass'n*, 184 Conn. 21, 441 A.2d 49, 51 (1981) ("The law of the case principle applies only to those matters essential to the appellate court's determination, not to mere dictum."); *Lake County Trust Co. v. Advisory Plan Comm'n of Lake County, Ind.*, 883 N.E.2d 124, 131 (Ind.App.2008) ("Statements that are not necessary in the determination of the issues presented on appeal are dicta, are not binding, and do not become the law of the case."); *State ex rel. Goettsch v. Diacide Distribs., Inc.*, 596 N.W.2d 532, 537 (Iowa 1999) ("The law of the case doctrine does not apply to dictum." (Citation omitted)); *Brinkerhoff–Faris Trust & Sav. Co. v. Hill*, 328 Mo. 836, 42 S.W.2d 23, 24 (1931) ("As our former decision was not based upon a finding of the facts, the foregoing statement was not necessary to a disposition of the case, and hence not controlling on the issues of fact. Thus we are free to review the evidence and make such findings as we deem proper."); *Sec. State Bank v. Gugelman*, 230 Neb. 842, 434 N.W.2d 290, 292 (1989) ("A decision of this court upon a former appeal is controlling only as to the actual point determined in that appeal."); *Van Rensselaer v. Wright*, 12 N.Y.S. 330, 330 (N.Y. Gen. Term 1890) ("When a court dismisses an appeal on the ground that the matter decided rested solely in the discretion of the court below, it is quite plain that a discussion whether the decision appealed from was correct or not is not in the least pertinent. What the court of appeals decides is authoritative, till overruled or distinguished. What it talks about in opinions, but does not decide, may be eloquent and logical,-a storehouse for future briefs,-but is not authoritative."); *Hayes v. City of Wilmington*, 243 N.C. 525, 91 S.E.2d 673, 682 (1956) ("However, the doctrine of the law of the case contemplates only such points as are actually presented and necessarily involved in determining the case. The doctrine does not apply to what is said by the reviewing court, or by

the writing justice, on points arising outside of the case and not embodied in the determination made by the Court. Such expressions are obiter dicta and ordinarily do not become precedents in the sense of settling the law of the case."); *In re Norton's Estate*, 177 Or. 342, 162 P.2d 379, 380 (1945) ("And it was added, though unnecessary to the decision, that the sister, the question of whose status was not then before the court and not presented in argument, was not appointed by law to succeed to the decedent's estate. Being dictum, this statement is not the law of the case and does not preclude us from now considering and deciding the question...."); *Hill v. Houpt*, 292 Pa. 339, 141 A. 159, 160 (1928) ("In every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but obiter dicta."); *Webster v. Williams*, 185 S.C. 443, 194 S.E. 330, 331 (1937) (holding that unnecessary dictum did not form the law of the case); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 662 (Tex.App.2006) ("Dictum is an observation or remark made concerning some rule, principle, or application of law suggested in a particular case, which observation or remark is not necessary to the determination of the case. The law of the case doctrine does not apply to dicta." (Citations omitted)); *DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1003 (Utah App.1992) (concluding that "dicta ... does not constitute the law of this case").

Thus, we hold that the discussion of the legal role of the recommendations of the General Plan in the subdivision approval process in Prince George's County in *Archers Glen I* did not resolve finally the issue or preclude the parties from litigating the issue on remand. As such, it could not have been the law of the case, nor was it intended to be so by the panel that decided *Archers Glen I*.[8]

---

8. Petitioners' claim at oral argument before us that the Court of Special Appeals's discussion of the question in *Archers Glen I* misled them, to their detriment, into believing the issue was decided in their favor is patently disingenuous.

We conclude by noting that Petitioners presented but two questions in their successful Petition for Writ of Certiorari. All parties, however, devoted substantial portions of their briefs to arguing whether the General Plan's Growth Objectives are binding on the Commission and applicants in the subdivision review process. Neither question in Petitioners' petition fairly embraced this disputation.[9] That issue is not properly before us and we shall not address it. Maryland Rule 8–131(b), provides, in pertinent part:

> Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.

It is of no consequence that the issue was briefed fully by all sides. *Renbaum v. Custom Holding, Inc.,* 386 Md. 28, 33 n. 2, 871 A.2d 554, 557 n. 2 (2005); *Calvert Joint Venture # 140 v. Snider,* 373 Md. 18, 31 n. 8, 816 A.2d 854, 861 n. 8 (2003); *Md. State Police v. Zeigler,* 330 Md. 540, 562–563, 625 A.2d 914, 925 (1993); *Wright v. State,* 307 Md. 552, 587, 515 A.2d 1157, 1175 (1986); *Huger v. State,* 285 Md. 347, 354, 402 A.2d 880, 885 (1979). "[S]ince the time when this Court's jurisdiction became largely dependent upon the issuance of a writ of certiorari, we have consistently held that, in a case decided by an intermediate appellate court, we shall not consider an issue unless it was raised in a certiorari petition, a cross-petition, or

---

9. Petitioners noted at oral argument that the law of the case will not apply where the underlying "decision was clearly erroneous and would work a manifest injustice." *Turner v. Hous. Auth. of Balt.,* 364 Md. 24, 34, 770 A.2d 671, 677 (2001). If we were to hold that the doctrine of the law of the case applied, we would consider the parties' contentions regarding the legal correctness of the relevant commentary in *Archers Glen I.* The parties' arguments regarding the binding or advisory nature of the recommendations of the General Plan are appropriate for mention in this opinion, however, only to the extent that they supply context to understanding the properly presented question in Petitioner's petition regarding the law of the case doctrine.

the order by this Court granting certiorari." *State v. Broberg,* 342 Md. 544, 570, 677 A.2d 602, 614 (1996) (Eldridge, J., dissenting). We again decline to address an issue not raised fairly in an otherwise successful Petition for Writ of Certiorari.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**